## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

LABORERS' PENSION FUND, and     )
LABORERS' WELFARE FUND OF THE     )
HEALTH AND WELFARE DEPARTMENT     )
OF THE CONSTRUCTION AND GENERAL     )
LABORERS' DISTRICT COUNCIL OF     )
CHICAGO AND VICINITY, and LABORERS'     )
DISTRICT COUNCIL RETIREE HEALTH     )
AND WELFARE FUND, and JAMES S.     )
JORGENSEN, Administrator of the Funds,     )
                   Plaintiffs,     )     Case No. 17 C 53
    v.     )
                              )     Judge
ALLSTATE CONCRETE CUTTING INC., an     )
Illinois corporation,     )
                   Defendant.     )

## COMPLAINT

Plaintiffs, Laborers' Pension Fund, and Laborers' Welfare Fund of the Health and

Welfare Department of the Construction and General Laborers' District Council of Chicago and

Vicinity, and Laborers' District Council Retiree Health and Welfare Fund (collectively "Funds")

and James S. Jorgensen (hereinafter "Jorgensen"), Administrator of the Funds, by their attorneys,

Patrick T. Wallace, Jerrod Olszewski, Amy N. Carollo, Katherine Mosenson, Kelly Carson, and

G. Ryan Liska, for their Complaint against Defendant Allstate Concrete Cutting Inc., an Illinois

corporation, state:

### COUNT I

### (Failure To Submit Delinquent Employee Benefit Contributions as Revealed by an Audit)

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee

Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, 29 U.S.C. §185(a), 28 U.S.C. §1331, and federal common law.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.      The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4.      Plaintiff James S. Jorgensen ("Jorgensen") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Jorgensen is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.      Defendant Allstate Concrete Cutting Inc. (hereinafter the "Company") is an Illinois corporation. Company does business within this District, and was at all times relevant herein an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c)

2

6.      The Union is a labor organization within the meaning of 29 U.S.C. §185(a). The Union and the Company have been parties to a collective bargaining agreement, which became effective June 1, 2013. ("Agreement"). (A copy of the the Agreement entered into between the Union and the Company which Agreement adopts and incorporates Master Agreements between the Union and various employer associations, and also binds the Company to the Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit A.)

7.      The Funds have been duly authorized to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees. Further, the Funds have been duly authorized by the construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors' Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCMC"), and the Lake County Contractors Association ("LCCA") to act as an agent in the collection of contributions due to those funds.

8.      The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered

3

under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee. Pursuant to the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, contributions which are not submitted in a timely fashion are assessed 20 percent liquidated damages plus interest.

9.      The Agreement and the Funds' respective Agreements and Declarations of Trust require the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Company performed covered work during the audit period of October 1, 2013 through December 31, 2015, (a true and accurate copy of the audit is attached hereto as Exhibit B) which revealed that Company has

(a)      failed to report and pay contributions in the amount of $1,148.62 owed to Plaintiff Laborers' Pension Fund for the audit period of October 1, 2013 through December 31, 2015, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)      failed to report and pay contributions in the amount of $1,132.73 owed to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of October 1, 2013 through December 31, 2015, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

4

(c)     failed to report and pay contributions in the amount of $431.30

owed to Plaintiff Laborers' District Council Retiree Health and Welfare Fund of the

Construction and General Laborers' District Council of Chicago and Vicinity for the

period of October 1, 2013 through December 31, 2015, thereby depriving the Welfare

Fund of contributions, income and information needed to administer the Fund and

jeopardizing the health and welfare benefits of the participants and beneficiaries

(d)     failed to report and pay contributions in the amount of $56.75

owed to Laborers' Training Fund for the period of October 1, 2013 through December 31,

2015, thereby depriving the Laborers' Training Fund of contributions, income and

information needed to administer the Fund and jeopardizing the training fund benefits of

the participants and beneficiaries;

(e)     failed to report and pay contributions in the amount of $13.62

owed to Laborers' District Council Labor Management Committee Cooperative

("LDCLMCC") for the audit period of October 1, 2013 through December 31, 2015,

thereby depriving the LDCLMCC of contributions, income and information needed to

administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(f)     failed to report and pay contributions in the amount of $6.81 owed to

Industry Advancement Fund ("IAF") for the audit of October 1, 2013 through December

31, 2015, thereby depriving the IAF of contributions, income and information needed to

administer the Fund and jeopardizing the benefits of the participants and beneficiaries

(g)     failed to report and pay contributions in the amount of $2.27

owed to Lake County Contractors' Association Fund ("LCCA") for the audit of October

5

1, 2013 through December 31, 2015, thereby depriving the LCCA of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries;

(h)     failed to report and pay contributions in the amount of $7.95 owed to Laborers' Employers' Cooperation and Education Trust ("LECET") for the audit of October 1, 2013 through December 31, 2015, thereby depriving the LECET of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries; and

(i)     failed to report and pay contributions in the amount of $1.14 owed to CISCO Fund ("CISCO") for the audit of October 1, 2013 through December 31, 2015, thereby depriving the CISCO of contributions, income and information needed to administer the Fund and jeopardizing the benefits of the participants and beneficiaries.

12.     Under the terms of the Agreements and the Funds' respective Agreements and Declarations of Trust, Company owes liquidated damages plus interest on all unpaid contributions, and paid late contributions.

13.     Under the terms of the Agreement and the Funds' respective Agreements and Declarations of Trust, Company is liable for the costs of any audit which reveals unpaid contributions. Accordingly, Company owes the Funds $1,303.06 in audit costs for the audit for the period of October 1, 2013 through December 31, 2015.

14.     Company's actions in failing to submit payment upon an audit to which it submitted its books and records violate Section 515 of ERISA, 29 U.S.C. §1145.

15.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, the terms of the Agreement and the Funds' respective Trust Agreements, Company is liable to the Funds for delinquent contributions, liquidated damages, interest, audit costs, attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Allstate Concrete Cutting Inc.:

a.      entering judgment in sum certain in favor of the Funds and against Company on the amounts due and owing pursuant to the audit for the period of October 1, 2013 through December 31, 2015, including contributions, interest, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

b.      awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure to Pay Union Dues as Revealed by an Audit)

16.     Plaintiffs reallege paragraphs 1 through 15 as though fully set forth herein.

17.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

18.     Notwithstanding the obligations imposed by the Agreement, Company performed covered work during the audit period and Company failed to withhold and/or submit payment of

7

$146.66 in union dues that were or should have been withheld from the wages of employees for the period of October 1, 2013 through December 31, 2015, thereby depriving the Union of information and income. See Exhibit B.

19.     Pursuant to the Agreement, Company owes liquidated damages on all late or unpaid dues. Accordingly, Company owes liquidated damages for the unpaid union dues revealed as due and owing on the audit, liquidated damages on the paid late union dues during the audit period, as well as audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate. See Exhibit B-1.

20.     Pursuant to the Agreement Company is liable to the Funds for any unpaid union dues revealed by the audit as well as liquidated damages, audit costs, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Allstate Concrete Cutting Inc.:

a.     entering judgment in sum certain in favor of the Funds and against Company on the amounts due and owing pursuant to the audit for the period of October 1, 2013 through December 31, 2015, including dues, liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and costs; and

b.     awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

8

## COUNT III

### (Failure To Timely Pay Employee Benefit Contributions)

21.　　Plaintiffs reallege paragraphs 1 through 20 of Counts I and II as though fully set forth herein.

22.　　Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, Company has performed covered work during the months of August, 2016 forward, has submitted its benefits reports, but has:

(a)　　failed to submit the corresponding contributions to Plaintiff Laborers' Pension Fund for the period of August, 2016 forward, thereby depriving the Laborers' Pension Fund of contributions, income and information needed to administer the Fund and jeopardizing the pension benefits of the participants and beneficiaries;

(b)　　failed to submit the corresponding contributions to Plaintiff Laborers' Welfare Fund of the Health and Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of August, 2016 forward, thereby depriving the Welfare Fund of contributions, income and information needed to administer the Fund and jeopardizing the health and welfare benefits of the participants and beneficiaries;

(c)　　failed to submit the corresponding contributions to Plaintiff Laborers' District Council Retiree Health and Welfare Fund of the Construction and General Laborers' District Council of Chicago and Vicinity for the period of August, 2016 forward, thereby depriving the Retiree Fund of contributions, income and information needed to administer the Fund and jeopardizing the training fund benefits of the participants and beneficiaries; and

(d)　　failed to submit the corresponding contributions owed to one or more of the other

affiliated funds identified above for the period of August, 2016 forward, thereby depriving said fund(s) of contributions, income and information needed to administer said fund(s) and jeopardizing the benefits of the participants and beneficiaries.

23.     Company's actions in failing to submit timely contributions violate Section 515 of ERISA, 29 U.S.C. §1145, and Section 301 of the LMRA. 29 U.S.C. §185, and federal common law interpreting ERISA, 29 U.S.C. §1132 (g)(2).

24.     Pursuant to Section 502(g)(2) of ERISA, 29 U.S.C. §1132 (g)(2), Section 301 of the LMRA, 29 U.S.C. §185, federal common law, the terms of the Agreement and the Funds' respective Trust Agreements, Company is liable to the Funds for delinquent contributions, liquidated damages, interest, reasonable attorneys' fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request this Court enter a judgment against Defendant Allstate Concrete Cutting Inc. as follows:

a.     ordering Defendant to submit benefit contributions for the time period of August, 2016 forward;

b.     entering judgment in sum certain against Defendants on the amounts due and owing pursuant to the amounts pleaded in the Complaint, the August, 2016 forward reports, including contributions, interest, liquidated damages, and attorneys' fees and costs; and

c.     awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT IV

### (Failure To Submit Reports and Pay Union Dues)

10

25.     Plaintiffs reallege paragraphs 1 through 24 of Count I through III as though fully set forth herein.

26.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees.

27.     Dues reports and contributions are due by the 10th day following the month in which the work was performed.  Dues reports and contributions which are not submitted in a timely fashion are assessed liquidated damages.

28.     Notwithstanding the obligations imposed by the Agreement, Company has performed covered work during the months of August, 2016 forward, and has failed to withhold and/or report to and forward union dues that were deducted or should have been deducted from the wages of its employees for the period of August, 2016 forward, thereby depriving the Union of income and information.

29.     Pursuant to the Agreement Company is liable to the Funds for the unpaid union dues, as well as liquidated damages, reasonable attorneys' fees and costs as the Union's collection agent, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant Allstate Concrete Cutting Inc. as follows:

a.     ordering Defendant to submit the Company's August, 2016 forward dues contributions;

b.     entering judgment in sum certain against Defendants on the amounts due and

owing, as revealed by the reports submitted, including dues contributions, liquidated damages, and attorneys' fees and costs; and

      c.    awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

January 4, 2017

                                          Laborers' Pension Fund, et al.
                                          By: /s/ Jerrod Olszewski
                                                        Jerrod Olszewski

Jerrod Olszewski
Office of Fund Counsel
Laborers' Pension and Welfare Funds
111 W. Jackson Blvd., Suite 1415
Chicago, IL 60604
(312) 692-1540

12

# CONSTRUCTION & GENERAL LABORERS'
# DISTRICT COUNCIL OF CHICAGO AND VICINITY
### AFFILIATED WITH THE LABORERS' INTERNATIONAL UNION OF NORTH AMERICA
999 McCLINTOCK DRIVE • SUITE 300 • BURR RIDGE, IL 60527 • PHONE: 630/655-8289 • FAX: 630/655-8853

## INDEPENDENT CONSTRUCTION INDUSTRY COLLECTIVE BARGAINING AGREEMENT

It is hereby stipulated and agreed by and between **Allstate Concrete Cutting Inc.** ("Employer") and the Construction and General Laborers' District Council of Chicago and Vicinity, Laborers' International Union of North America ("Union"), representing and encompassing its affiliated Local Unions, including Local Nos. 1, 2, 4, 5, 6, 25, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1035, 1092, together with any other Local Unions that may come within its jurisdiction ("Local Unions"), and encompassing the geographic areas of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry and Boone counties, Illinois, that:

1. **Recognition.** The Employer recognizes the Union as the sole and exclusive collective bargaining representative for the employees now and hereinafter employed in the Laborer bargaining unit with respect to wages, hours and other terms and conditions of employment. If majority recognition previously was granted under Section 9(a) of the Act, it shall remain in effect. Otherwise, recognition under Section 9(a) of the Act shall automatically be granted to the Union without the need for a Board-conducted election upon the Union's demonstration that a majority of the employees have designated the Union as their exclusive bargaining representative. The Employer has not assigned its rights for purposes of collective bargaining with the Union to any person, entity or association, and hereby revokes its prior assignment of bargaining rights, if any. The Employer further voluntarily elects not to assign such bargaining rights to any person, entity or association during the term of this Agreement or any extension hereof, without written approval from the Union. The Employer shall abide by this Agreement, and all extensions hereof, or until such election is made at least one Laborer during the term of this Agreement or the term of any extension hereof.

2. **Labor Contract.** The Employer affirms and adopts the applicable Collective Bargaining Agreement(s), as designated by the Union, between the Union and the Builders Association, the Chicago Area Independent Construction Association, the Chicago Area Rail Contractors Association, the Chicago Area Scaffolding Association, the Chicago Demolition Contractors' Association, the Concrete Contractors Association of Greater Chicago, the Contractors Association of Will and Grundy Counties, the Fox Valley General Contractors Association, the Gypsum Drywall Contractors of Northern Illinois/Chicagoland Association of Wall and Ceiling Contractors, the Illinois Environmental Contractors Association, the Illinois Road and Transportation Builders Association, the Illinois Small Pavers Association, the Lake County Contractors Association, the Mason Contractors Association of Greater Chicago, the Underground Contractors Association, and all other employer associations with whom the Union or its affiliated Local Unions have an agreement. If the applicable Collective Bargaining Agreement(s) expire during the term of this Agreement, any limitation on the right to strike shall also expire until a successor labor agreement has been established, which shall be incorporated retroactively herein. This Agreement supersedes all contrary terms in the applicable Collective Bargaining Agreement(s).

3. **Total economic increase.** The Employer shall pay its employees a total economic increase of $2.90 per hour effective June 1, 2006; $3.00 per hour effective June 1, 2007; $3.00 per hour effective June 1, 2008 and $3.10 per hour effective June 1, 2009, said amounts to be allocated between wages, fringe benefits and other funds by the Union in its sole discretion. Effective June 1, 2006, the minimum wage rate shall be $31.55 per hour.

4. **Dues Checkoff.** The Employer shall deduct from the wages of employees uniform initiation fees, assessments, membership dues, and working dues in the amount of 2.75% of gross wages or such other amount as directed by the Union, and shall remit monthly to the designated Union office the sums so deducted, together with an accurate list showing the employees from whom dues were deducted, the employees' individual hours, gross wages and deducted dues amounts for the monthly period, not later than the tenth (10th) day of the month following the month for which said deductions were made.

5. **Work Jurisdiction.** This Agreement covers all work within the applicable Collective Bargaining Agreements and all work within the Union's trade and geographic jurisdiction as set forth in the Union's Statement of Jurisdiction, as amended from time to time, which are incorporated by reference into this Agreement. The Employer shall assign all work described therein to its Union-represented Laborer employees and acknowledges the appropriateness of such assignment. Neither the Employer nor its work assignments as required under this Agreement shall be stipulated or otherwise subject to adjustment by any jurisdictional disputes board or mechanism except upon written notice by and direction of the Union.

6. **Subcontracting.** The Employer, whether acting as a contractor, general manager or developer, shall not contract or subcontract any covered work to be done at the site of construction, alteration, painting or repair of a building, structure or other work to any person, corporation or entity not signatory to and covered by a collective bargaining agreement with the Union. This obligation applies to all tiers of subcontractors performing work at the site of construction. If the Employer contracts or subcontracts any such covered work to any person or proprietor who is not signatory to this Agreement, the Employer shall require such subcontractor to be bound by all the provisions of this Agreement, or the Employer shall maintain daily records of the subcontractor's Employers jobsite hours and be liable for payments to the Health and Welfare Department of Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund, and the Construction and General Laborers' District Council of Chicago and Vicinity Joint Apprentice and Training Trust Fund as set forth in the applicable fringe benefit article(s). The Employer shall further assume the obligations of its subcontractors for prompt payment of employees' wages and other benefits required under this Agreement, including reasonable attorneys' fees incurred in enforcing the provisions hereof.

7. **Fringe Benefits.** The Employer agrees to pay the amounts that it is bound to pay under said Collective Bargaining Agreements to the Health and Welfare Department of The Construction and General Laborers' District Council of Chicago and Vicinity, the Laborers' Pension Fund (including Laborers' Excess Benefit Funds), the Fox Valley Benefit Funds, the Construction and General Laborers' District Council of Chicago and Vicinity Apprentice and Training Trust Fund, the Chicago Area Laborers-Employers Cooperation Education Trust, the LDC/LMCC, and to all other designated Union-affiliated benefit and labor-management funds (the "Funds"), and to become bound by and be considered a party to the agreements and declarations of trust creating the Funds as if it had signed the original copies of the trust instruments and amendments thereto. The Employer ratifies and affirms that all prior contributions paid to the Welfare, Pension, Training and other Funds were made by duly authorized agents of the Employer at all proper rates, and evidence the Employer's intent to be bound by the trust agreements and Collective Bargaining Agreements in effect when the contributions were made, acknowledging that payment continues to be a sufficient instrument in writing to bind the Employer to the applicable collective bargaining agreements.

8. **Contract Enforcement.** All grievances fixed by either party arising hereunder shall, at the Union's discretion, be submitted to the Chicago District Council Grievance Committee for final and binding disposition in lieu of another grievance committee, provided that deadlocked grievances shall be submitted to final and binding arbitration upon timely demand. Should the Employer fail to comply within ten (10) days with any binding grievance award, whether by grievance committee or arbitration, it shall be liable for all costs and legal fees incurred by the Union to enforce the award. Notwithstanding anything to the contrary, nothing herein shall limit the Union's right to strike or withdraw its members because of non-payment of wages and/or fringe benefit contributions, failure by the Employer to timely remit dues to the Union, or non-compliance with a binding grievance award. The Employer's violation of any provision of this paragraph will give the Union the right to take any other legal and economic action, including but not limited to all remedies at law or equity. It is expressly understood and agreed that the Union's right to take economic actions in addition to, and not in lieu of, its rights under the grievance procedures. Where necessary to correct contract violations, or where no acceptable steward is currently employed, the Union may appoint and place a steward from outside the workforce at all job sites.

9. **Successors.** In the event of any change in the ownership, management or operation of the Employer's business or substantially all of its assets, by sale or otherwise, it is agreed that as a condition of such sale or transfer that the new owner or manager, whether corporate or individual, shall be fully bound by the terms and conditions of this Agreement. The Employer shall provide no less than ten (10) days' prior written notice to the Union of the sale or transfer and shall be obligated for all expenses incurred by the Union to enforce the terms of this paragraph.

10. **Termination.** This Agreement shall remain in full force and effect from June 1, 2006 (unless dated differently below) through May 31, 2010, and shall continue thereafter unless there has been given written notice, by certified mail by either party hereto, received no less than sixty (60) nor more than ninety (90) days prior to the expiration date, of the desire to modify or amend this Agreement through negotiations. In the absence of such notice the Employer and the Union agree to be bound by the new applicable association agreement(s), incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated agreements, and thereafter for the duration of successive agreements, unless and until timely notice of termination is given not less than sixty (60) nor more than ninety (90) days prior to the expiration of each successive Collective Bargaining Agreement.

11. **Execution.** The signatory below warrants his or her receipt of the applicable Collective Bargaining Agreement(s) and authorization from the Employer to execute this Agreement, without fraud or duress, and with full knowledge of the obligations and undertakings contained herein. The parties acknowledge and accept the facsimile signatures on this Agreement as if they were the original signatures.

Dated: **May 7**, 20 **09**

ACCEPTED:

Laborers' Local Union No. **152**

By: _J. Michael Oggarith_

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY

By: _James P. Connolly, Business Manager_

By: _Renton Sherman_
Richard Sherman, Secretary-Treasurer

For Office Use Only: **LCCA**

**Allstate Concrete Cutting Inc.**
(Employer)

**Mike Seay    Assistant**
(Print Name and Title)

_(Signature)_

**14 Balliner Rd**
(Address)

**Riverside IL 60041**
(City, State and Zip Code)

**(817) 245-4575    (817) 245-4576**
(Telephone/Telefax)

Effective August 16, 2007    WHITE - LOCAL UNION    •    CANARY - TRUST FUND    •    PINK - DISTRICT COUNCIL    •    GOLD - EMPLOYER



**EXHIBIT A**

Allstate Concrete Cutting, Inc.
514 Rollins Road
Ingleside, IL 60041

Employer Number:34969

October 1, 2013 to December 31, 2015



1



**LEGACY**
PROFESSIONALS LLP
CERTIFIED PUBLIC ACCOUNTANTS

April 5, 2016

Board of Trustees
Pension and Welfare Funds of Construction and General
    Laborers' District Council of Chicago and Vicinity
11465 Cermak Rd.
Westchester, Illinois 60154

    We have applied certain procedures, as discussed below, to the payroll records of Allstate Concrete Cutting, Inc., a contributing employer to the Pension and Welfare Funds of Construction and General Laborers' District Council of Chicago and Vicinity, for the period October 1, 2013 to December 31, 2015. The purpose of our review was to assist you in determining whether contributions to the Trust Funds are being made in accordance with the collective bargaining agreements in effect and with the Trust Agreements of the Funds. The propriety of the contributions is the responsibility of the employer's management.

    Our procedures included a review of the pertinent provision of the collective bargaining agreements and compared underlying employer payroll records to Fund contribution records. The employer records we reviewed included payroll journals, individual earnings records, payroll tax returns, contribution reports, job classifications, and general disbursement records as appropriate. The scope of this engagement was limited to records made available by the employer and would not necessarily disclose all exceptions in employer contributions to the Trust Funds. Any compensation paid to employees not disclosed to us or made part of the written record was not determinable by us and was not included in our review.

    Our procedures related to a review of the employer's payroll records only and did not extend to any financial statements of the contributing employer. The procedures were substantially less in scope than an audit of the financial statements of the contributing employer, the objective of which is the expression of an opinion on the contributing employer's financial statements. Accordingly, no such opinion is expressed.

    The findings of this audit report should not be construed as an endorsement or ratification of any of the Employer's contribution practices. The finding is based solely on those documents that the Employer provided to the auditors. This firm has not been retained to provide, and does not provide, any interpretation or advice concerning any terms of the collective bargaining agreement between the Employer and the Union or the terms of the Funds' respective Agreement and Declarations of Trust. All questions concerning the Employer's contribution practices, or any contributions or benefits-related issue, should be directed to the Union or the Fund office. No failure to note an exception to any of the employer's contribution practices should be construed as a ratification of such practice or waiver of the Union or the Funds' ability to challenge such practice in the future.

    The exceptions to employer contributions noted are detailed on the accompanying schedule.

*Legacy Professionals LLP*

# Laborers' District Council
## Reconciliation of Differences Per Year

| Fiscal Year Ending | 5-31-2011 | 5-31-2012 | 5-31-2013 | 5-31-2014 | 5-31-2015 | 5-31-2016 | Total Due |
|---|---|---|---|---|---|---|---|
| Fringe Hours Not Reported | - | - | - | - | 113.50 | - | 113.50 |
| Dues Hours Not Reported | - | - | - | - | 113.50 | - | 113.50 |
| Dues Wages Not Reported | - | - | - | - | 4,512.50 | - | 4,512.50 |
| **Dollar Amount Due** | | | | | | | |
| Welfare (Active) | - | - | - | - | 1,132.73 | - | 1,132.73 |
| Welfare (Retiree) | - | - | - | - | 431.30 | - | 431.30 |
| Pension | - | - | - | - | 1,148.62 | - | 1,148.62 |
| Training | - | - | - | - | 56.75 | - | 56.75 |
| IAF | - | - | - | - | 6.81 | - | 6.81 |
| CISCO | - | - | - | - | 1.14 | - | 1.14 |
| LCCASE | - | - | - | - | 2.27 | - | 2.27 |
| LECET | - | - | - | - | 7.95 | - | 7.95 |
| LDCLMCC | - | - | - | - | 13.62 | - | 13.62 |
| Working Dues | - | - | - | - | 146.66 | - | 146.66 |
| **Total** | $ - | $ - | $ - | $ - | $ 2,947.85 | $ - | $ 2,947.85 |

| | |
|---|---|
| Plus previous late charges assessed by Laborers' Pension and Welfare Funds | $ - |
| Plus previous underpayments incurred to Laborers' District Council Funds | $ - |
| Plus previous penalties incurred to Laborers' District Council Funds | $ - |
| Audit Fee | $ 1,303.06 |
| **Total Amount Due** | $ 4,250.91 |

| | | | |
|---|---|---|---|
| Employer Name: | Allstate Concrete Cutting, Inc. | Person Contacted: | Michael Seay |
| Employer #: | 34969 | Date of Contact: | February 29, 2016 |
| Date of Audit: | March 24, 2016 | Telephone: | (847) 245-4575 |
| Audit Period: | October 1, 2013 to December 31, 2015 | Auditor: | Tim Piatek |

# Laborers' District Council
## Schedule of Deficiencies

Employer Name: Allstate Concrete Cutting, Inc.
Employer Number: 34989
Agreement Type: LCCA

Audit Period: October 1, 2013 to December 31, 2015
Date of Audit: March 24, 2016
Field Auditor: Tim Piatek

| SSN | Name | | Jun | Jul | Aug | Sep (2014) | Oct | Nov | Dec | Jan | Feb | Mar (2015) | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 8 | GEISLER, THOMAS | Fringe Hours | | | | | | | 41.50 | | | | 35.00 | | 76.50 |
| | | Dues Hours | | | | | | | 41.50 | | | | 35.00 | | 76.50 |
| | | Dues Wages | | | | | | | 1,662.50 | | | | 1,387.00 | | 3,049.50 |
| | SEAY, DAN | Fringe Hours | | | | | | | | | | | 37.00 | | 37.00 |
| | | Dues Hours | | | | | | | | | | | 37.00 | | 37.00 |
| | | Dues Wages | | | | | | | | | | | 1,463.00 | | 1,463.00 |

| | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Total Fringe Hours | | - | - | - | - | - | - | 41.50 | - | - | - | 72.00 | - | 113.50 |
| Total Dues Hours | | - | - | - | - | - | - | 41.50 | - | - | - | 72.00 | - | 113.50 |
| Total Wages | | - | - | - | - | - | - | 1,662.50 | - | - | - | 2,850.00 | - | 4,512.50 |

| | | Jun | Jul | Aug | Sep | Oct | Nov | Dec | Jan | Feb | Mar | Apr | May | Total |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Welfare (Active) | $9.98 | - | - | - | - | - | - | 414.17 | - | - | - | 718.56 | - | 1,132.73 |
| Welfare (Retiree) | $3.80 | - | - | - | - | - | - | 157.70 | - | - | - | 273.60 | - | 431.30 |
| Pension | $10.12 | - | - | - | - | - | - | 419.98 | - | - | - | 728.64 | - | 1,148.62 |
| Training | $0.50 | - | - | - | - | - | - | 20.75 | - | - | - | 36.00 | - | 56.75 |
| I4J | $0.06 | - | - | - | - | - | - | 2.49 | - | - | - | 4.32 | - | 6.81 |
| CISCO | $0.01 | - | - | - | - | - | - | 0.42 | - | - | - | 0.72 | - | 1.14 |
| LCCASE | $0.02 | - | - | - | - | - | - | 0.83 | - | - | - | 1.44 | - | 2.27 |
| LECET | $0.07 | - | - | - | - | - | - | 2.91 | - | - | - | 5.04 | - | 7.95 |
| LDCLMCC | $0.12 | - | - | - | - | - | - | 4.98 | - | - | - | 8.64 | - | 13.62 |
| Working Dues | 3.25% | - | - | - | - | - | - | 54.03 | - | - | - | 92.63 | - | 146.66 |
| SHEET TOTAL | | - | - | - | - | - | - | 1,078.26 | - | - | - | 1,869.59 | - | 2,947.85 |

LEGACY PROFESSIONALS, LLP
COMPLIANCE AUDIT INFORMATION SHEET

EMPLOYER NAME    Allstate Concrete Cutting, Inc.    EMPLOYER #    34969

ADDRESS    514 Rollins Road    PHONE #    (847) 245-4575

CITY/STATE/ZIP    Ingleside, IL 60041    FEIN #

DATE OF CONTACT    February 29, 2016    AUDIT PERIOD    October 1, 2013 to December 31, 2015

CONTACT'S NAME    Michael Seay    TITLE    President

PERSON FUND IS TO CONTACT    SAME AS ABOVE    TITLE    SAME AS ABOVE

ENTITY TYPE    CORPORATION    FIELD REPRESENTATIVE    Joe Gilleran

MAIN BUSINESS ACTIVITY    Concrete Cutting Service

AVERAGE NUMBER OF EMPLOYEES:    6

AVERAGE NUMBER OF CHICAGO LABORERS:    3

| OWNERSHIP-PRINCIPALS | TITLE | % | ADDRESS |
|---|---|---|---|
| Michael Seay | President | 100 | |

BANKING FACILITIES USED AND ACCOUNT NUMBER:    State Bank of the Lakes: 203118383

DOES EMPLOYER HAVE INTEREST IN OTHER OPERATIONS ?    ☐ YES    ☑ NO

· IF YES, LIST NAME OF SAME

IS EMPLOYER A MEMBER OF ANY TRADE ORGANIZATION/ASSOCIATION?    ☐ YES    ☐ NO

IF YES, LIST NAME OF SAME    not provided

3

AUDIT DATE        March 24, 2016

AUDIT SITE (IF DIFFERENT FROM EMPLOYER'S ADDRESS):      Same as above

ALL REQUIRED ACCOUNTING RECORDS WERE AVAILABLE WITH THE EXCEPTION OF:

N/A

BRIEFLY DESCRIBE THE NATURE OF THE DELINQUENCY, IF ANY:

Employer failed to contribute on all hours worked by covered employees.

DID YOUR EXAMINATION UNCOVER ANYTHING SPECIAL OR UNUSUAL WHICH SHOULD BE BROUGHT TO
THE ATTENTION OF THE FUND COUNSEL OR OTHER INTERESTED PERSONS?

☑ YES      ☐ NO

IF YES, EXPLAIN:      A wage & hour was also initiated in conjunction with the benefit audit.

Our gross sales analysis indicates a high amount of gross sales relative to the labor force, purchases and subcontracting.
There were a large number of withdrawals on behalf of Mr. Seay. We did not notice any transfers to other accounts.

AUDITOR:      Tim Piatek

4

Legacy Professionals LLP
Payroll Audit Information Sheet

I, _Mike Seay_____, declare and state as follows:

I am an Officer and/or Shareholder of _AllState Concrete Cutting Inc_

(hereinafter, the "Company") and I am duly authorized to make the representations and enter into the agreements set forth herein on behalf of the Company.

Company Name: _AllState Concrete Cutting Inc_

Entity Type: _S Corp_

Business Activity : _Concrete Cutting_

Ownership-Principals   Title   %  _100_

_Mike Seay_

Banking Facilities Used and Account Number: _State Bank OF The Lakes_

Do any of the Company's Owners shareholders or officers have a shareholder or officer position in another company or entity? Yes_____ No _X_

If Yes, List Names of Other companies or entities:_____

Has the Company employed any subcontractors owned or operated by any Officer, Shareholder, or family members of the Company's Officers and/or Shareholders? Yes_____ No _X_

If Yes, List Names of the subcontractors and the related Owners/Operators:

Has the Company subcontracted work covered by the Laborers' collective bargaining agreement to any subcontractors that are not signatory with the Chicago Laborers' Union?

Yes_____ No _✗_____

If Yes, List Names of the subcontractors:

_____

_____

_____

_____

I, the undersigned, certify under penalty of perjury that the foregoing is true and correct.

_____, as Officer and/or Shareholder of

_Allstate Concrete Cutting Inc_____

Dated:_ 3-24-2016__



# LEGACY
## PROFESSIONALS LLP
### CERTIFIED PUBLIC ACCOUNTANTS

Pension and Welfare Funds of Construction and General
  Laborers' District Council of Chicago and Vicinity
11465 Cermak Road
Westchester, Illinois 60154

For professional services rendered in connection
with the compliance audit of:

Allstate Concrete Cutting

| | | | |
|---|---|---|---|
| Field Auditor | 12.9 hour(s) @ | $ 75.00 per hour | $ 967.50 |
| Manager | 1.8 hour(s) @ | $ 150.00 per hour | $ 270.00 |
| Clerical | 0.2 hour(s) @ | $ 60.00 per hour | $ 12.00 |
| Expenses | | | $ 53.56 |
| | CURRENT TOTAL | | $ 1,303.06 |

www.legacycpas.com
The perfect balance of commitment and experience.

# LABORERS' PENSION & WELFARE FUNDS

AUDIT

EMPLOYER  ALLSTATE CONCRETE CUTTING INC          CODE  34969

FOLLOWING ARE THE FIGURES OWED BY THE ABOVE MENTIONED CONTRACTOR AS A RESULT OF THE AUDIT.

| | HOURS | WELFARE | RATE | RETIREE WELFARE | RATE | PENSION | RATE | TRAINING FUND | RATE | DUES | LDCMICC | RATE | LIAF | RATE | LCOASE | RATE | LECET | RATE | CISCO | RATE | TOTAL |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10-1-13-12-31-15 ADDITIONAL HOURS | | | | | | | | | | | | | | | | | | | | | |
| 6-1-14-5-31-15 | 113.50 | 1,132.73 | 9.98 | 431.30 | 3.80 | 1,148.62 | 10.12 | 56.75 | 0.50 | 146.66 | 13.62 | 0.12 | 6.81 | 0.06 | 2.27 | 0.02 | 7.95 | 0.07 | 1.14 | 0.01 | 2,947.85 |
| MEN NOT REPORTED | | | | | | | | | | | | | | | | | | | | | |
| SUBTOTAL | 113.50 | 1,132.73 | | 431.30 | | 1,148.62 | | 56.75 | | 146.66 | 13.62 | | 6.81 | | 2.27 | | 7.95 | | 1.14 | | 2,947.85 |
| 10% LIQUIDATED DAMAGES | | | | | | | | | | 14.67 | 1.36 | | 1.36 | | 0.45 | | 0.80 | | 0.23 | | 16.63 |
| 20% LIQUIDATED DAMAGES | | 226.55 | | 86.26 | | 229.72 | | 11.35 | | | | | | | | | | | | | 555.92 |
| AUDIT COSTS | | 531.52 | | 260.61 | | 521.23 | | | | | | | | | | | | | | | 1,303.06 |
| ATTORNEY FEES | | | | | | | | | | | | | | | | | | | | | |
| ACCUM LIQUIDATED DAMAGES | | 385.91 | | 213.75 | | 581.91 | | | | 229.60 | | | | | | | | | | | 1,411.17 |
| ACCUM INTEREST | | 140.49 | | 53.69 | | 142.46 | | 7.04 | | | 1.69 | | 0.94 | | 0.28 | | 0.59 | | 0.14 | | 347.42 |
| TOTAL DUE | | 2,466.90 | | 1,043.41 | | 2,623.94 | | 75.14 | | 390.93 | 16.67 | | 9.01 | | 3.00 | | 9.74 | | 1.51 | | 6,582.25 |


EXHIBIT B-1

1/4/17